MARTHA ANN COOMBS, Appellant, *v.* SALT LAKE
& FORT DOUGLAS RAILWAY COMPANY, UTAH
CENTRAL RAILWAY COMPANY, and JAMES
McGREGOR and CLARENCE CAREY, Receivers,
Respondents.

[For former opinion see *Coombs* v. *Salt Lake & Fort Douglas Ry.
Co.*, 9 Utah, 322. 34 P. R. 248.]

1. Appeal From Part of Judgment or Decree.—Effect of
Reversal Without Instructions. — Final Judgment on
Motion.—Practice.—In an action against an insolvent rail-
way company for an injunction *nisi* to become absolute on
the failure of the company to pay the damages assessed by
the court for injuries caused to plaintiff's property by the
building and continuous operation and maintenance of a rail-
road, the court awarded plaintiff damages, but denied the
injunction. Neither party asked for a new trial nor excepted
to any of the findings of facts, which covered all the
material issues. Plaintiff excepted and appealed from that
part of the decree denying the injunction, assigning as error
that that part of the decree appealed from was not supported
by the findings of facts. The supreme court reversed and
remanded the cause without instructions. *Held*, that on the
remittitur and opinion of the supreme court, and the record,
plaintiff was entitled on motion to the entry of a final judg-
ment granting a perpetual injunction restraining the opera-
tion and maintenance of the defendant's railroad unless the
damages assessed were paid in a definite length of time
determined by the court, upon plaintiff executing a deed con-
veying the easements and property taken to the defendant
company and releasing it from all further damages.

2. Id.—Duty of Trial Court Upon Reversal Without Instruc-
tions.—Question of Law Only on Appeal.—Where a cause
is reversed and remanded without instructions it is the duty
of the trial court to determine from the record and from the
opinion of the Supreme Court whether to enter a final judg-
ment or grant a new trial. Where an appeal is taken on the

judgment roll and the findings covering all the material issues are not excepted to by either party, and the error assigned is that the specific part of the judgment appealed from is not supported by the findings, upon reversal without instructions, it is the duty of the trial court to enter a final judgment supported by the findings without a re-trial of the issues.

3. INJUNCTION.—DAMAGES INCIDENTAL.—NEW TRIAL.—RES JUDICATA.—In an action against an insolvent railroad corporation. for an injunction *nisi* to become absolute upon the failure of the corporation to pay the damages assessed as incidental to the main relief, and the court awards damages but denies the injunctive relief, upon appeal from that part of the decree denying the injunctive relief where neither party excepts to the findings, it is error for the trial court upon a reversal without instructions to grant a new trial on the issues as to damages, as the judgment for damages is *res judicata.*

4. FINDINGS OF FACTS.—WHEN AN "AGREED CASE."—EFFECT OF REVERSAL WITHOUT INSTRUCTIONS.— Where the findings are full and adequate upon all the material issues and are not excepted to by either party, they become the conceded facts of the case, and are in effect an "agreed case," upon which, if the trial court errs in entering judgment the upper court will reverse and remand the cause to the trial court for the entry of a proper judgment. In such a case, if the cause is reversed and remanded without instructions, it is the duty of the trial court to look into the record and enter such a judgment as the record and opinion warrant.

5. ID.—PRESUMPTION ON APPEAL.—Where an appeal is taken upon the judgment roll and the error assigned is that the findings do not support the judgment and there is no evidence in the record, the upper court is bound to presume that the findings were warranted by the evidence.

(No. 547.   Decided Feb. 23, 1895.   39 P. R. 503.)

APPEAL from the District Court of the Third Judicial District.   Hon. Samuel A. Merritt, *Judge.*

Action by Martha Ann Coombs against the Salt Lake & Fort Douglas Railway Company, Utah Central Railway Company and James McGregor and Clarence Carey, re-

ceivers, for an injunction *nisi* to become absolute within
a definite length of time to be determined by the court
unless the damages assessed by the court were paid. The
court awarded plaintiff damages but denied the injunctive
relief. Neither party asked for a new trial nor excepted
to any of the findings of facts, which covered all the
material issues. Plaintiff appealed from that specific part
of the judgment denying the injunction, and the cause
was reversed and remanded without instructions. (See 9
Utah, 322.) Upon the remittitur and opinion of the
supreme court and the record, plaintiff moved the court
to enter a final judgment and to grant the injunction,
and from the order overruling her motion, she appeals.
*Reversed.*

[The opinion states the facts except that the entire
record on the former appeal used in support of the motion
was before the court, having been brought up in a bill of
exceptions. The court in its opinion cites all the author-
ities relied upon by both parties.—Rep.]

*James A. Williams,* for appellant.

*Mr. Le Grande Young,* for both railroads, respondents,
and *Mr. P. L. Williams,* for receivers, respondents.

King, J.:

From the record in this case it appears that suit was
brought by the plaintiff against the defendant corporations
to secure a permanent injunction, preventing them from
operating their road or running cars thereon, unless there
was paid to plaintiff, within such time as might be deter-
mined by the court, a sum of money sufficient to compen-
sate her for the lasting injuries accruing to her property
through the construction and maintenance of defendant
railroad. The cause was tried by the court, which found

in harmony with the material allegations of the complaint. Among other things, the court found that plaintiff was the owner of valuable property in Salt Lake City, which was bounded on the north and west by public streets, and that defendant Salt Lake & Ft. Douglas Railway Company constructed its road along said streets, and in front of her property, and in so doing made a large and deep cut, as a result of which one of the streets was ruined, and egress from and ingress to said premises rendered impossible; that a corner of plaintiff's property was entered upon and cut away in the construction of said road; that defendant never acquired, by purchase or otherwise, the easements and property injured; that, since the construction of said road, defendant Salt Lake & Ft. Douglas Railway Company has continuously operated its trains on the same, and the Utah Central Company, since its incorporation, has and now is running its trains thereon, under a lease from the former; that the running and operating of said trains, which continues night and day, jars said premises and the residences thereon, and throws ashes and cinders, sparks and smoke, thereon, and has repeatedly set fire to said residences; that said property is in the immediate neighborhood of, and is especially fitted for, superior residences, but that it has been greatly damaged by the construction and operation of defendant's road; that said damages amount to $3,300; that the injury thereto is permanent in its character, and is continuously and constantly recurring, so that it is a great hurt, inconvenience, and damage to said property and easements and hereditaments appurtenant thereto; that said defendants are insolvent.

Upon these findings of fact and the conclusions of law, the court awarded plaintiff judgment for $3,300, as damages, together with costs against the Salt Lake & Ft. Douglas Railway Company, and ordered that plaintiff execute a deed to it conveying the easements and property taken

and injured, and release it from further damages upon the payment of said sum. It was further ordered that the injunction and injunctive relief be denied, and that the plaintiff do not recover as against the Utah Central Railway Company. No exceptions whatever were taken by the defendants to any proceedings or findings or judgment of the court. The plaintiff excepted only to that part of the decree denying injunctive relief. Subsequently she appealed to the supreme court of the territory, assigning as error the refusal of the court to grant the injunction as prayed for in her complaint. The record before this court discloses that the former appeal was taken on the judgment roll, and that the only portion of the decree appealed from was that denying plaintiff an injunction *nisi;* that both parties were satisfied with the findings of facts, took no exceptions thereto, nor did either ask for a new trial; that the error assigned was that the only portion of the judgment appealed from was not supported by the findings of fact. The appellate court decided: "It is the duty of the court to enjoin the company's (defendant's) use of the property, unless within a specified time it will pay the damage assessed. It follows that the court erred in not granting the injunction prayed for upon the conditions named. Judgment reversed, and the case is remanded." *Coombs* v. *Railway Co.*, 9 Utah, 322, 34 Pac. 248. Upon filing the remittitur in the lower court, with a certified copy of the opinion, appellant moved the court to enter a proper judgment, and grant an injunction *nisi,* in accordance with the opinion of the supreme court. The motion was overruled, and from the order overruling the motion plaintiff appeals.

One question only is presented for determination, viz.: What decree ought the lower court to have entered, with the record and remittitur before it? It is contended by the appellant that it was the duty of the lower court to

look into the entire record, enter a decree awarding an injunction, unless respondent paid the damages theretofore found, within a reasonable time determined by the court; and the respondent earnestly insists that the decision of the supreme court was tantamount to a reversal of the case, and a direction to grant a new trial, and that the case was open for a retrial, at least upon the injunctive feature. It is evident from the "opinion" of the court (9 Utah 322, 34 Pac. 248) that the question presented by the appeal was whether or not the trial court had erred in denying the injunction. It was an equitable action, the damages being incidental, inasmuch as the insolvency of the defendant precluded any recovery, except through the employment of the injunctive powers of the court. The power of the court to grant an injunction was discussed, and it was held that the injunction should have been granted. "It follows that the court below erred in not granting the injunction prayed, upon the conditions named. Judgment reversed, and the case is remanded,"—is the language of the opinion. We think this language susceptible of but one interpretation. It was a decision that the plaintiff was entitled to a perpetual injunction, enjoining the operation of defendant's railroad (upon her tendering a deed as provided in the findings of fact), unless plaintiff's damages were paid. The words "conditions named" unmistakably referred to the tender of a proper deed upon the part of plaintiff, and the payment of the damages upon the part of the defendant. The concluding sentences from the "opinion," as above set out, were equivalent to a direction that the lower court look into the record, and ascertain the conditions, and award plaintiff the injunctive relief prayed for, unless, within such reasonable time determined by the court, plaintiff's damages were paid. A new trial was not ordered. A re-examination of the issues was not contemplated, and, in view

of the record, not required. The plaintiff's injury was a recurring one. The insolvency of the defendant left but one remedy. It was a proper case for an injunction. It ought to have been granted by the trial court. This error was reversed, and, upon the remanding of the case, there was but the one duty for the court to perform,—correct it as directed by the supreme court. What was to be tried, upon respondent's theory that the supreme court granted a "new trial?" No appeal was taken from that portion of the decree awarding damages, so that the judgment for damages was *res adjudicata.* The findings, having been full and adequate upon every material issue raised by the pleadings, and not having been excepted to by either party, stand as the conceded facts of the case. They are in effect an "agreed case," and the lower court will always on an agreed case, stating a real cause of action, enter judgment. If it errs, the upper court will reverse and remand, not for the purpose of forcing the parties to agree upon a different case, but in order that the lower court may enter a proper judgment in accordance with the opinion. The upper court may, in terms, direct the lower court to enter a particular judgment; but if it simply reverses and remands the case, without directing what kind of judgment should be entered, then it is the duty of the lower court to look into the record, and enter such judgment as the opinion and record warrant.

No evidence was carried up on the former appeal in this case, and this court is bound to presume that the special findings made by the court were warranted by the evidence; and the only question before the court on the former appeal was whether the facts as found warranted an injunction. It was held that they did. If it had been intended that a new trial should be granted, it would have been so ordered. Where it is possible, the upper court should end the litigation; and where the facts are before it, and all the ma-

terial issues are disposed of, and it is plain that the party
against whom the reversal is pronounced cannot prevail in
the suit upon retrial, the proper judgment should be directed
on the findings. "Where all the material issues are disposed
of by the findings, it seems unreasonable, and contrary to
settled rules of practice, to presume, in the absence of any-
thing in the record to such effect, either that the respond-
ent did not do his duty in producing all of his evidence,
or that the findings of the court upon such evidence were
incorrect. The natural presumption, in the absence of
anything in the record to the contrary, is that the respond-
ent had a full and fair trial; that he was afforded every
opportunity to produce all of his evidence; and that he
did not keep back anything, but did what the settled rules
required of him, and produced all of his proof; and that
the action of the court thereon was regular and correct.
Now, if such be the case (the policy of the law being ad-
verse to the prolonging of the litigation, if it can be
avoided), it would seem to be an unsound rule which
compels the party to go through the strife of a second
trial upon the bare possibility, not founded upon anything
in the record, that the respondent might be able to make
a different case upon retrial." Hayne, New Trial, § 296.

We do not think this view is opposed by the cases cited
by respondents. It cannot be doubted but that the lower
court has no authority to enter a different judgment
from that directed by the appellate court. The principal
case upon which respondent relies is *Griffin* v. *Marquardt,*
17 N. Y. 28; and counsel furnishes us with an excerpt
from the opinion of the court, which is: "Where, how-
ever, the judgment at special term is reversed for error
in law, a new trial should be awarded, unless it is entirely
plain from the pleadings or the very nature of the con-
troversy that the party against whom the reversal is pro-
nounced cannot, upon any fresh evidence, prevail in the

suit. It is proper to say, and to say it with great distinctness, as the opinion of this court, that extreme caution ought to be exercised in refusing a new trial where judgments are reversed. The discretion of the appellate courts should be exercised in that direction only in cases where it is entirely clear, either from the pleadings or from the very nature of the controversy, that a party against whom the reversal is pronounced cannot prevail in the suit." With this view we concur. The record in the case at bar discloses that the defendants' admitted the construction of the road upon the streets named, the making of the excavations therein, and the continuous use of said railroad for the operation of trains thereon, and, to defeat plaintiff's action, contended that the franchise was obtained from Salt Lake City to construct said railroad along said streets, and that the trains were operated thereon for a number of years without complaint, protest, or objection from plaintiff, and that, by reason of delay or laches and long occupation of the premises, plaintiff should not be allowed to maintain her action for injunction against the defendants. The question of damages having been eliminated from the case by the judgment of the court, unappealed from, a question of law only was presented upon the appeal, and this question was determined in favor of the appellant. In the language of the case last cited, it was "entirely plain from the pleadings and the very nature of the controversy that the party against whom the reversal was pronounced could not, upon any fresh evidence, prevail in the suit."

The case of *Guernsey* v. *Miller*, 80 N. Y. 183, is relied upon by respondents' counsel to sustain the position that the action of the supreme court in the case at bar was tantamount to a direction for a new trial. In that case the court say: "We think, however, that the general term

erred in directing judgment in favor of Van Kleeck. It cannot be said that upon a new trial the case would remain unaltered. The facts are not undisputed, and as it does not appear that the respondent is entitled to judgment in his favor, as a matter of law, the issues made by the respective parties should have been sent back to the trial court for its determination." We think that, from all that appeared in this case upon its presentation to the supreme court, the appellant was entitled to judgment in her favor, as a matter of law. The case of *National Inv. Co.* v. *National Savings, etc., Ass'n* (Minn.), 53 N. W. 546, is instructive on this question. The action was tried, without a jury, by the court, who filed findings of fact and conclusions of law, and ordered judgment for the plaintiff. Upon appeal to the supreme court by the defendant, judgment was reversed, the words employed by the court being "Judgment reversed." Upon a mandate of the supreme court, defendant moved for judgment, without further trial, which motion was granted. From the order denying a new trial, plaintiff appealed, and the case was affirmed. The court say: "The effect of a simple reversal of judgment depends upon the grounds upon which the reversal is based, as expressed in the opinion of the court. In the absence of any formal direction, the opinion is to be consulted for the purpose of determining the effect of the reversal." An examination of the opinion of the court in the present case shows that the judgment was reversed, not because of any error in law occurring at the trial, or because the findings of fact were not justified by the evidence, but solely upon the ground that, upon the findings of fact as made, the defendant, and not the plaintiff, was entitled to judgment. Upon such a state of facts no new trial was necessary, but, as was said in *Jordan* v. *Humphrey* (Minn.), 21 N. W. 713, merely the correction or modification of the

judgment; so it shall answer the formal definition of "judgment," to wit: "The sentence of law upon the record." Where the judgment is reversed solely upon the ground that it is not the one that should have been rendered upon the verdict or findings of fact, the effect of simple reversal is to send the case back, not for new trial, but merely for correction of judgment.

In the case of *Treadway* v. *Johnson*, 39 Mo. App. 176, the court say: "The only question which seems to be presented on this appeal is whether the court erred in entertaining the defendant's motion to enter judgment, without giving the plaintiff an opportunity of retrying the cause. The propositions involved in this cause were not propositions of fact, but propositions of law. The contract between the parties was entirely in writing, the meaning and legal effect of which the court construed when the case was here on the first appeal. Under these circumstances, there was nothing for the circuit court to try after the cause was remanded, and the only judgment it could render, in conformity with the direction of our opinion, was the judgment it actually did render." And, where an action was brought to reform a deed, judgment was for the defendant, and the plaintiff appealed. No dispute arose as to the facts found, the only question being whether, on these facts, plaintiff was entitled to judgment. The court of appeals held that he was, and remanded the case, that the deed might be reformed, and judgment entered for damages. Under these circumstances, it was held that the lower court had no right to retry the facts. *Butler* v. *Barnes* (Conn.) 24 Atl. 328.

In the case of *Gaines* v. *Rugg*, 148 U. S. 228, 13 Sup. Ct. 611, it appears that the decree was entered by the circuit court, awarding possession of certain lands to the plaintiff, and that he have an accounting. On appeal to the supreme court it held that there was no error in the

proceedings below in respect to the title and possession of the lands, but reversed the decree for error in certain items of accounting. The order of the court in reversing the case was that the case be "remanded for further proceedings to be had therein in conformity with the opinion and decree of this court, as according to right and justice and the laws of the United States ought to be had." The lower court attempted to reopen the case, and *mandamus* proceedings were instituted, although the court stated that an appeal would lie. The court say: "Because this court was dissatisfied with the decree in respect to the accounting, and only for that reason, it reversed the decree; but it remanded the cause to the district court, with a direction, as the opinion and mandate explicitly state, for further proceedings to be had therein in conformity with the opinion of this court. It did not disturb the findings and decrees of the circuit court in regard to the title and possession, but only its disposition of the matter of accounting. The mandate and opinion, taken together, although they use the word, 'reversed,' amount to a reversal only in respect to the accounting, and to a modification of the decree in respect to the accounting; and to an affirmance of it in all other respects. It is contended for the respondent that the decree of this court was one absolutely reversing the decree of the circuit court; that the circuit court had a right, therefore, to proceed in the case of the language of the mandate, not merely 'in conformity with the opinion and decree of this court,' but also 'according to right and justice;' and that, therefore, 'it had authority to permit defendant to take further testimony in the support of his exceptions,' and to set down the cause 'upon the issues formed by the pleadings and exceptions.' In other words, that the whole controversy would be reopened as if it had never been passed upon by this court as to the title and possession of the land. This cannot be allowed, and is not in accordance with the opinion and mandate of this court."

From the authorities cited, and in reason, we are of the opinion that the lower court should have entered a decree as prayed for by the appellant, upon receiving the remittitur from this court; and that it was error in overruling plaintiff's motion for an order entering a final judgment and injunction *nisi.* Accordingly, the judgment of the lower court is reversed, and the cause remanded, with directions that the lower court, upon the execution of a deed by the appellant as set forth in the judgment of the trial court, enter a final judgment, and grant an injunction, as prayed for in plaintiff's complaint, unless the defendant pays, within such time as the court may determine, the judgment for damages heretofore entered in said court.

SMITH, J., concurs.